Opinion issued July 29, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-09-00257-CR

          01-09-00258­CR

———————————

GERALD EUGENE WILLIAMS, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 263rd District Court

Harris County, Texas



Trial Court Case Nos. 1139688 & 1139689

 



 

MEMORANDUM OPINION

          Appellant Gerald Eugene
Williams was convicted by a jury of the offenses of (1) possession with intent
to deliver 3, 4‑methylenedioxy methamphetamine (ecstasy) weighing more
than four grams but less than 400 grams (trial court case number 1139688,
appellate case number 01‑09‑00257‑CR) and (2) possession of marijuana
in a usable quantity of less than five pounds but more than four ounces (trial
court case number 1139689, appellate case number 01‑09‑00258‑CR).  See
Texas Controlled Substances Act, Tex.
Health & Safety Code Ann. §§ 481.103(a) (1), 481.113(a), (d), 481.121(a), (b)(3) (Vernon 2010).  Williams pleaded true in each offense to
prior felony convictions for possession of a controlled substance and aggravated
perjury.  The jury assessed punishment for
the ecstasy offense at thirty years in prison and for the marijuana offense at
five years in prison and a $2,500 fine, both sentences to run concurrently.  See
Tex. Penal Code Ann. §§ 12.33, 12.42(a) (2), (d) (Vernon Supp.
2009).  Williams brings three issues, claiming legal and factual
insufficiency of the evidence and ineffective assistance of counsel.  We affirm.

Background

Houston Police Officer D. Garza testified at trial that he was
assigned to the narcotics division in October 2007 when a confidential
informant assisted him in getting a narcotics search warrant on 6327 Hanley
Street.  Garza executed the search
warrant twelve hours later, on October 31, 2007.

When Garza arrived at the scene, he saw a Chevy Tahoe backing
out of the driveway and asked uniformed police officers accompanying the search
team to stop the vehicle and detain the people in it.  The search team consisted of Officers Byrd,
Walker, Corrales, and Morales, and Sergeant Lewis.  The house had burglar bars on both the front
and back doors, and the team broke the lock to gain entry.  No one was in the house at the time of the
search.  The mailbox for 6327 Hanley had
the word “Williams” written on it.

Garza saw a gold Cadillac parked in front of the house.  A later vehicle registration search indicated
the car was owned by Williams, with 6327 Hanley as the registration
address.  Garza went outside and spoke
with Williams, giving him Miranda
warnings and presenting him with a copy of the search warrant.  Garza also asked Williams if there were any
illegal narcotics, weapons, or money inside the house, and Williams told him
there was “some marijuana.”

The team then began its search of the house.  Corrales was the canine officer, who
participated with his narcotics dog.  In
the living room, Garza saw a shoebox on the sofa containing marijuana in
individually wrapped, clear sandwich bags.

In the garage, Garza saw three large bags of marijuana and
two large bags of ecstasy, one with 990 yellow tabs and the other with 400
blue-green tabs.  Garza testified that the
yellow ecstasy tabs were in plain view and that the marijuana was packaged in
larger amounts and was not at that time ready for street sales.  He estimated the street value of the yellow
tabs at $19,800 and the blue‑green tabs at $8,000.  Garza also saw a wooden table with scratch
marks, which he testified were from razor‑blade use while breaking up
narcotics.

In the master bedroom, Garza saw a plate which he testified
was used to prepare and cut up larger amounts of narcotics for personal use or
individual sales.  All of the clothes in
the closet were men’s clothing.  He also
found a credit union statement and a credit card approval notice, both of which
were addressed to Williams at 6327 Hanley.

In the dining room, Garza saw a photograph of Williams
standing next to the gold Cadillac parked in front of the house.  In the photo, Williams was wearing a black
hat and suit, which Garza testified were items of clothing he saw in the master
bedroom closet.

Garza saw multiple firearms in the house.  First, he found a loaded shotgun in plain
view in the living room, propped up on the same sofa where he found marijuana
in a shoebox.  Second, he found
a loaded Kel‑Tec 9 mm semi-automatic pistol and
a Browning .22 caliber semi-automatic pistol on
the dresser and in the closet of the master bedroom, respectively. 
The dresser was the place where Garza also found the credit union
statement and the credit card approval notice.

In the living room, Garza saw clear sandwich bags.  He testified that these bags were similar to
the bags containing marijuana found in the shoebox and that the bags were used
to make individual packets for sale.

On cross examination, Garza stated that the mailbox had
“Williams” on it, but no first name or initial. 
The search team did not find any mail in the house addressed to anyone
other than Williams.  During the
inventory search of Williams, the officers found a set of keys in his possession,
and Williams asked the officers to give them to a friend so she could secure
the house while he was in jail.  Garza
did not ascertain if Williams’ keys fit the locks on the house.  When asked how he knew that Williams lived in
the house, Garza replied, “He said so.”

Garza testified that he had seen the Cadillac parked in front
of the house when he first started his investigation, before the date of the
search.  He did not know if the car was
operable, and he did not check to see if any of the keys found on Williams fit
the car.  Garza was also asked about the
credit union statement, which was dated December 31, 2005.  He did not know how long the credit card
approval notice had been in the house.

Garza was not aware that any fingerprints were taken off of
any of the firearms.  He testified that
the police did not charge Williams for the marijuana found in the Chevy Tahoe,
but instead charged the other person who was with him in that vehicle.  He also testified that the confidential
informant identified Williams only by his first name.

Garza conceded that he did not put the clothes found in the
closet next to Williams to see if they would fit, and he did not check to see
if any of the hats fit Williams’ head.  He
testified that the grass under the Cadillac was longer than the surrounding
grass.

Garza testified the electricity was turned on at the house.  He conceded that his police report did not
reflect that he asked Williams if he lived at 6327 Hanley within a month of the
search, whether Williams had keys to the house, whether Garza asked the other
passenger in the Chevy Tahoe if she lived at 6327 Hanley, or whether Garza
asked people in the neighborhood if they had seen Williams at the house or how
long the Cadillac had been in the yard.

On redirect examination, Garza testified that the search
warrant was based on a narcotics purchase from inside the house.  Garza observed the house about five times in
the week before getting the search warrant. 
During that time, Garza saw Williams three times—once coming out of the
house and twice standing in the front yard. 
Garza stated that he saw incidents consistent with drug dealing and that
the Cadillac was parked in the front yard the whole week.

Garza testified that when Williams was arrested on the day of
the search, he had $1,050 in his possession, consisting of 23 $20 bills, 49 $10
bills, 13 $5 bills, and 35 $1 bills. 
Garza testified that this distribution of bills was consistent with the
kind of bills a narcotics trafficker would have.  Williams also had an unexpired Texas
identification card issued by the Department of Public Safety, which listed his
address as 6327 Hanley.

On re-cross examination, Garza testified that he called
Williams’ employer to verify that Williams had a job.  Garza also conceded that he neither had proof
of a specific person to whom Williams sold drugs, nor whether there was someone
else in the house on the three occasions that Garza saw Williams at the house.

Houston Police Officer J. Bryant testified at trial that he
and his partner Officer A. Olivares participated in the October 31, 2007 search
of 6327 Hanley.  It was their job to detain
anyone outside of the house on the property. 
Bryant and Olivares first stopped the Chevy Tahoe that was backing out
of the driveway.  The driver of the
vehicle was Williams, and the passenger was Odelia Roy.  Bryant saw a bag of marijuana on the
vehicle’s center console.

On cross examination, Bryant testified that the police
determined that the marijuana on the car console belonged to Williams because
the vehicle belonged to him.  He also
found marijuana in Roy’s purse, and the police filed charges against Roy for possession
of that marijuana.  Bryant did not know
if Williams was read his Miranda
rights.

Bryant testified that he never heard Williams admit that the marijuana
in the house was his.  Bryant was not
aware if anyone asked the neighbors who lived at 6327 Hanley.

Officer R. Corrales testified at trial that he is a narcotics
canine officer.  The narcotics dog is
trained to “alert” on the presence of cocaine, marijuana, heroin, ecstasy, and
methamphetamine.

On the day of the 6327 Hanley search, the dog “alerted” on the
shoebox located on the living room sofa, a bag in the garage, the master
bedroom, and a sofa in the second bedroom. 
After the house was searched, the officers hid some of the money they
found in Williams’ possession on the front porch, an area the dog had
previously examined and found clear.  The
dog “alerted” on the place where the money was hidden, and Corrales testified
that this indicated the odor of narcotics on the money.

On cross examination, Corrales testified about a photograph taken
inside the house that shows a chest of drawers with a bottle of nail polish and
bracelets on it.  Corrales testified that
nail polish is something normally used by women and that this suggested that a
woman was staying in the house. Corrales did not notice any women’s clothing in
the house.

Houston Police Officer R. Walker testified at trial that he
is a plain clothes narcotics officer and was part of the search team for 6327
Hanley.  Walker was responsible for
collecting the evidence from the search and maintaining the chain of custody.  Walker identified the marijuana from the
shoebox found in the living room.  He
also found eight tabs in the shoebox, which he thought looked to be ecstasy.  Walker then identified marijuana and ecstasy that
he found in the garage.  Walker also found
30 tabs of Alprazolam (Xanax) in the garage.

On cross examination, Walker testified that he did not know
if any mail was found at 6327 Hanley that was addressed to someone other than
Williams.  Walker said that the credit
union statement was found in a dresser drawer in the master bedroom, but he did
not remember seeing a credit card application. 
Walker was not aware that any of the items from the house were submitted
to be searched for latent fingerprints.

A. Barker, a toxicologist with the Houston Police Department
crime laboratory, testified at trial that evidence seized from 6327 Hanley was 3, 4‑methylenedioxy methamphetamine
(ecstasy) and marijuana.

Analysis

I.                 
Legal sufficiency
of the evidence

          In his first issue, Williams contends
the evidence is legally insufficient to establish that he possessed ecstasy with intent to deliver or possessed
marijuana in a usable quantity.  Williams
specifically challenges whether the State has proved “possession” of the
ecstasy and marijuana, which the Texas Controlled Substances Act defines as “actual
care, custody, control, or management.”  Tex. Health &
Safety Code Ann. § 481.002(38) (Vernon 2010). 

          The standard of review for legal
sufficiency of the evidence is whether, viewing the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
318–19, 99 S. Ct. 2781, 2788–89 (1979); King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000).  The jury is
the exclusive judge of the credibility of witnesses and of the weight of their
testimony.  Margraves v. State, 34
S.W.3d 912, 919 (Tex. Crim. App. 2000).

To prove unlawful
possession of a controlled substance, the State must prove that the defendant
exercised control, management, or care over the substance and that he knew the
matter possessed was contraband.  See Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim.
App. 2005). 
Regardless of whether the evidence is direct or circumstantial, it must
establish that a defendant’s connection to the contraband was more than
fortuitous.  Id. at 405–06.  However,
presence or proximity, when combined with other evidence, either direct or
circumstantial, e.g., “links,” may well be sufficient to establish the element
of possession beyond a reasonable doubt. 
Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim.
App. 2006).

Though not an exhaustive list, the Court of Criminal Appeals has
recognized the following factors as links to establish possession: (1) the
defendant’s presence when a search is conducted; (2) whether the contraband was
in plain view; (3) the defendant’s proximity to and the accessibility of the contraband;
(4) whether the defendant was under the influence of narcotics when arrested;
(5) whether the defendant possessed other contraband when arrested; (6) whether
the defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or
drug paraphernalia was present; (11) whether the defendant owned or had the
right to possess the place where the contraband was found; (12) whether the
place where the contraband was found was enclosed; (13) whether the defendant
was found with a large amount of cash; and (14) whether the conduct of the
defendant indicated a consciousness of guilt. 
Id. at 162 n.12.

When looking at the evidence in a light most favorable to the verdicts,
the State presented evidence for 9 out of these 14 factors.  However, it is not the
number of links that is dispositive, but rather, the logical
force of all of the evidence, both direct and circumstantial.  Id. at
162; Sambath Nhem v. State, 129 S.W.3d
696, 699–700 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding links
consisting of defendant’s personal belongings found in same room as controlled
substance and controlled substance found on defendant’s person were sufficient
to affirm where defendant was arrested outside of house and defendant was not
in exclusive possession of house).

 

A.    Links
Establishing Possession of Ecstasy

Factors 1 and 3: Williams’s presence when the search
was conducted, and Williams’s proximity to and the accessibility of the
contraband.  Officers Garza and Bryant testified that when they arrived,
Williams was backing out of the driveway of 6327 Hanley where the ecstasy was found.  Additionally, Williams asked the officers to
give his keys to a friend so she could secure and watch the house, implying
that he had access to the home and its contents.

Factor 2: Whether the contraband was in plain view.  There was
testimony and photos concerning ecstasy in plain view on a sofa in the garage.

Factor 5: Whether Williams possessed other
contraband when arrested.  Bryant testified that the marijuana found in
plain view in the Chevy Tahoe belonged to Williams.

Factor 6: Whether Williams made incriminating
statements when arrested.  Garza testified that Williams said there was
“some marijuana” in the house.

Factor 10: Whether other contraband or drug
paraphernalia were present.  The officers found marijuana and Xanax in the
house.  Garza also saw a wooden table
having scratch marks, which he testified were from razor‑blade use while
breaking up narcotics.  In the living
room, Garza saw clear sandwich bags and testified that the bags were used to
make individual packets for sale.  In the
master bedroom, Garza saw a plate which he testified was used to prepare and
cut up larger amounts of narcotics for personal use or individual sales.

Factor 11: Whether Williams owned or had the right
to possess the place where the contraband were found.  Garza and
Bryant testified that Williams’ Texas identification card listed 6327 Hanley as
his address.  The mailbox for 6327 Hanley
had the word “Williams” written on it. 
Garza found a
federal credit union statement and a credit card approval notice, both of which
were addressed to Williams at 6327 Hanley. 
The gold Cadillac that Garza saw outside the house was owned by Williams
and registered using 6327 Hanley
as the registration address.  In the dining room, Garza saw a
photograph of Williams standing next to the gold Cadillac parked in front of
the house.  In the photo, Williams was
wearing a black hat and suit, which Garza testified were items of
clothing he saw in the master bedroom closet. 
Finally, Williams asked the
officers to give his keys to a friend so she could secure and watch the house.

Factor 12: Whether the place where the contraband
was found was enclosed.  The ecstasy was found in the garage.

Factor 13: Whether Williams was found with a large
amount of cash.  Officers Garza and Bryant testified that
Williams had $1,050 in his possession, consisting of 23 $20 bills, 49 $10
bills, 13 $5 bills, and 35 $1 bills. 
Garza testified that this distribution of bills was consistent with the
kind of bills a narcotics trafficker would have.

Weapon.  Although not on the Evans list of factors, we note that
Garza found three firearms in the house: a loaded shotgun in plain view in the living room and a
loaded Kel‑Tec 9 mm semi-automatic pistol and
a Browning .22 caliber semi‑automatic
pistol on the dresser and closet of the master bedroom,
respectively.

B.    Links
Establishing Possession of Marijuana

          Factors
1, 3, 5, 6, 10, 11, and 13 are the same as those for ecstasy.  The weapons factor is also the same.  Factor 12, whether the place where the contraband
was found was enclosed is similar, as the marijuana was found in the house’s living
room and garage.

*        *        *

Viewing the evidence in the light most favorable to the
verdicts, we hold that a rational trier of fact could have found the essential
elements of both offenses, including the element of possession, beyond a
reasonable doubt.  Accordingly, we overrule
the first issue.

 

 

II.              
Factual
sufficiency of the evidence

          In his second issue, Williams contends
the evidence is factually insufficient to establish that he possessed ecstasy with intent to deliver or possessed
marijuana in a usable quantity. 
As with his legal sufficiency issue, Williams specifically challenges
whether the State has proved “possession” of the ecstasy and marijuana.

When conducting a factual sufficiency review, we view all of
the evidence in a neutral light.  Cain
v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).  We will set the verdict aside only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) the verdict is against the great weight and preponderance of the
evidence.  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). 
Under the first prong of Johnson, we cannot conclude that a
conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury.  Watson v. State, 204 S.W.3d
404, 417 (Tex. Crim. App. 2006).  Under
the second prong of Johnson, we cannot declare that a conflict in the
evidence justifies a new trial simply because we disagree with the jury’s
resolution of that conflict.  Id.  Before finding that the evidence is factually
insufficient to support a verdict under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury’s verdict.  Id.  In conducting a factual sufficiency review, we
must also discuss the evidence that, according to the appellant, most
undermines the jury’s verdict.  See
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

          We may not substitute our judgment for
that of the fact finder.  King v. State,
29 S.W.3d 556, 563 (Tex. Crim. App. 2000). 
The fact finder alone determines what weight to place on contradictory
testimonial evidence because that determination depends on the fact finder’s
evaluation of credibility and demeanor.  Cain,
958 S.W.2d at 408–09.  As the judge of
the credibility of the witnesses, the fact finder may choose to believe all,
some, or none of the testimony presented. 
Id. at 407 n.5.  The
standard for reviewing the factual sufficiency of the evidence is whether,
after considering all of the evidence in a neutral light, the jury was
rationally justified in finding guilt beyond a reasonable doubt.  Watson, 204 S.W.3d at 415.

On appeal, Williams does not substantively brief this issue
by providing references to the record that shows evidence that favors him.  At trial, Williams argued that: (1) the
mailbox did not have Williams’ first name or initial on it; (2) the mail
found in the house was either from 2005 (the credit union statement) or undated
(the credit card approval notice); (3) Officer Garza did not check to see
if Williams’ keys fit the locks on the house; (4) Garza neither took the
clothes he found in the closet and put them next to Williams to see if they
would fit, nor did he take any of the hats and check to see if they fit
Williams’ head; (5) Officer Bryant was not aware if anyone asked the neighbors
who lived at 6327 Hanley; (6) Officer Walker was not aware that any of the
items from the house were submitted to be searched for latent fingerprints; and
(7) Officer Corrales testified that he saw a bottle of nail polish and
bracelets on it, which suggested that a woman was staying in the house.

Considering all of the evidence in a neutral light, the jury
could have found the essential elements of the both offenses, including the
element of possession, beyond a reasonable doubt.  Accordingly, we cannot say that the jury’s verdicts
are against the great weight and preponderance of the evidence.

We overrule Williams’ second issue.

III.          
Ineffective
assistance of counsel

In his third issue, Williams claims his trial counsel was
ineffective.  To be entitled to a new
trial based on ineffective assistance of counsel, a defendant must show that
counsel’s performance was so deficient that he was not functioning as
acceptable counsel under the Sixth Amendment and that there is a reasonable
probability that, but for counsel’s error, the result of the proceedings would
have been different.  See Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Hernandez
v. State, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986).  The defendant bears the burden to prove
ineffective assistance of counsel.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.

          Allegations
of ineffective assistance of counsel must be firmly founded in the record.  McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App. 1996).  The review
of trial counsel’s representation is highly deferential and presumes that
counsel’s actions fell within a wide range of reasonable professional
assistance.  See Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  When the record is silent on the motivations
underlying trial counsel’s tactical decisions, the appellant usually cannot
overcome the strong presumption that trial counsel’s conduct was
reasonable.  See id.

          In
most cases, the record on direct appeal is undeveloped and cannot adequately
reflect the motives behind trial counsel’s actions.  See Mallett v. State, 65 S.W.3d
59, 63 (Tex. Crim. App. 2001).  Because
the reasonableness of trial counsel’s choices often involves facts that do not
appear in the appellate record, the Court of Criminal Appeals has stated that
trial counsel should ordinarily be given an opportunity to explain his actions
before a court reviews that record and concludes trial counsel was
ineffective.  See Bone v. State,
77 S.W.3d 828, 836 (Tex. Crim. App. 2002). 
A petition for writ of habeas corpus usually is the appropriate vehicle
to investigate ineffective-assistance claims. 
See Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim.
App. 2002).  Without proof in the record that
there is no plausible professional reason for trial counsel’s act or omission,
the reviewing court may not speculate on why counsel acted as he did.  See Bone, 77 S.W.3d at
835–36.

On
appeal, Williams argues that his trial counsel failed the first prong of Strickland—i.e.,
counsel’s performance was so deficient that he was not functioning as
acceptable counsel under the Sixth Amendment—because counsel did not (1) file a
motion to suppress evidence because the affidavit for probable cause to issue
the search warrant “may” have been insufficient, (2) make an opening statement,
(3) request an article 38.23 charge,*
and (4) poll the jury.  We address each
of these alleged deficiencies.

          Motion to suppress evidence.  Williams claims his trial counsel was
ineffective because trial counsel did not file a motion to suppress the evidence
from the search of the house.  Williams
claims that the affidavit for probable cause to issue the search warrant “may”
have been insufficient.  Williams,
however, does not present an argument on appeal to demonstrate that the
affidavit was insufficient.  To establish
ineffective assistance of counsel for failure to file a motion with the court,
a defendant must demonstrate that he would have succeeded on the motion.  Keller
v. State, 125 S.W.3d 600, 608 (Tex. App.—Houston [1st Dist.] 2003,
pet. dism’d) (citing Jackson v. State,
973 S.W.2d 954, 957 (Tex. Crim. App. 1998)).

          Opening statement.  Williams next claims his trial counsel was
ineffective because trial counsel did not make an opening statement.  The Court of Criminal Appeals has held that
although waiving an opening statement is one of the reasons reasonable people
can question the wisdom and rationale for trial counsel’s preparation and
strategy,  that alone is not sufficient
to show ineffective assistance without allowing trial counsel to first
respond.  See Rylander v. State, 101
S.W.3d 107, 110 (Tex. Crim. App. 2003).

          Article 38.23 charge.  Williams claims his trial counsel was
ineffective because trial counsel did not request an article 38.23 charge
concerning probable cause for the search warrant.  See
Tex. Code Crim. Proc. Ann. art.
38.23 (Vernon 2005).  A defendant must
meet the following three requirements before he is entitled to the submission
of a jury instruction under article 38.23(a): (1) the evidence heard by the
jury must raise an issue of fact; (2) the evidence on that fact must be
affirmatively contested; and (3) the contested factual issue must be material
to the lawfulness of the challenged conduct in obtaining the evidence.  Madden
v. State, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).  On appeal, Williams does not identify the
material contested factual issue that would give rise to an article 38.23
charge.  We also note that the affidavit
that formed the basis for the issuance of the search warrant was not introduced
into evidence and is therefore not in the appellate record.

          Polling the jury.  Williams claims his trial counsel was
ineffective because trial counsel did not poll the jury.  While the Code of Criminal Procedure allows
the jury to be polled, there is no requirement that trial counsel do so.  Tex.
Code Crim. Proc. Ann. art. 37.05 (Vernon 2006).  There is nothing in the appellate record to
indicate any reason why trial counsel should have polled the jury.  See
Belton v. State, 900 S.W.2d 886, 900
(Tex. App.—El Paso 1995, pet. ref’d) (rejecting ineffective‑assistance‑of‑counsel
claim for alleged failure to poll jury when claim is not supported by appellate
record).

It is
the defendant’s burden to prove there is no plausible professional reason for
trial counsel’s acts or omissions.  See
Bone, 77 S.W.3d at 836–37 & n.29. 
Without an evidentiary motion for new trial, we are not persuaded, based
on the existing appellate record and argument, that trial counsel could not
have had any plausible professional reasons for his actions.  See id. (stating that counsel should ordinarily be accorded opportunity to
explain his actions before being condemned as unprofessional and incompetent).  We therefore hold that Williams has not met
his burden under the first prong of Strickland to prove that his trial
counsel was deficient.  Because failure
to make the required showing of deficient performance will defeat an
ineffectiveness claim, we do not reach Williams’ argument on the second prong
of Strickland.  See Thompson,
9 S.W.3d at 813.

We overrule
Williams’ third issue.

Conclusion

          We affirm the trial court’s judgments.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Massengale.

Do not
publish.  Tex. R. App. P. 47.2 (b).











*               Code of Criminal Procedure article 38.23 provides:

 

                (a)
No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case.

          In any
case where the legal evidence raises an issue hereunder, the jury shall be
instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such
event, the jury shall disregard any such evidence so obtained.

          (b) It
is an exception to the provisions of Subsection (a) of this Article that the
evidence was obtained by a law enforcement officer acting in objective good
faith reliance upon a warrant issued by a neutral magistrate based on probable
cause.

 

Tex.
Code Crim. Proc. Ann. art. 38.23 (Vernon
2005).